J-A14030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.M.V. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.V., NOW KNOWN AS | : | |
| D.W. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 397 WDA 2019 |

Appeal from the Order Entered, February 12, 2019,
in the Court of Common Pleas of Lawrence County,
Orphans' Court at No(s):  20030 of 2018, O.C.A.

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED AUGUST 9, 2019**

D.W., formerly known as D.V. (Mother), appeals the orphans' court's denial of her private petition to terminate the parental rights of the incarcerated B.V. (Father), under the Adoption Act.[1] *See* 23 Pa.C.S.A. § 2511(a)(1).  After careful review, we affirm.

Father and Mother are the parents of a six-year-old daughter (Child). The parents wed in 2012, and Child was born in November of that year.  The parties were residing in Ohio during that time.  In September 2013, following a domestic violence incident in which Father fired a gun, Father pleaded guilty to kidnapping, felonious assault, domestic violence, and child endangerment. He was sentenced to a term of three to six years; he is scheduled to be released on September 28, 2019.  After Father's arrest, Mother applied for,

_____

[1] Mother's husband was prepared to adopt the child.

and the court in Ohio granted, a Consent Agreement and Domestic Violence Civil Protection Order. The order, which expired on October 9, 2018, barred Father from having any contact, direct or indirect, with either Mother or the minor child.

Despite the existence of a protection order, Mother facilitated contact between Father and Child during the early months of Father's incarceration. But the parents eventually divorced, and Mother remarried. Father attempted to stay in contact with Child, but his correspondence was limited once Mother began invoking the protection order. In June 2018, she filed a petition terminate Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1). After a hearing, the orphans' court denied Mother's petition.

Mother presents this timely appeal. Both Mother and the orphans' court complied with Pa.R.A.P. 1925. Mother raises two issues for our review:

1. As Mother had filed a petition to involuntarily terminate parental rights of Father, did the trial court abuse its discretion and/or err in denying Mother's petition as the weight of the evidence does not support the finding that Mother did not prove by clear and convincing evidence grounds for termination of Father's parental rights under 23 PA.C.S.A. § 2511(a)(1)?

2. Did the orphans' court abuse its discretion and/or err in denying Mother's petition as the court did not "give primary consideration to the developmental, physical and emotional needs and welfare of the child" pursuant to 23 Pa.C.S.A. § 2511(b), as the total weight of the evidence presented does not support the finding that it is in the child's best interest to deny Mother's petition?

Mother's Brief at 8-9.[2]  Child joins Mother's position and adopts Mother's brief as her own.[3]

We are mindful of our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (quoting *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory

---

[2] Mother presents two issues for our review, but she included eight issues in her statement of matters complained of on appeal.  While the issues she presents before us do not match verbatim any of the issues she raised with the orphans' court, the two issues contained in her brief are fairly suggested by the issues she raised in her concise statement. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").  We may proceed with our review.

[3] Child had proper representation under 23 Pa.C.S.A. § 2313(a).

grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The petitioner must prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

In her first issue, Mother contends that the orphans' court decision is against the weight of the evidence. Mother maintains that termination was warranted because Father's incarceration prevented him from performing parental duties.

Section 2511(a)(1) provides that a court can terminate parental rights if, *inter alia*, the petitioner provides clear and convincing evidence that the respondent-parent failed to perform parental duties for a period of at least six months immediately preceding the filing of the petition. *See* 23 Pa.C.S.A. § 2511(a)(1).

Although it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted).

In an analysis under this section, we have acknowledged there is no simple or easy definition of parental duties. But we have explained:

> Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> * * *
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*Id.* (Internal citations and quotations omitted).

The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. *Id.*

A parent's incarceration does not, in itself, provide grounds for the termination of parental rights. *Id.* An analysis of an incarceration case depends upon which provision under section 2511(a) termination is sought.

When a petitioner seeks to terminate an incarcerated parent's rights under section 2511(a)(1), we have said a parent's responsibilities are not tolled during incarceration. *Id.* The court's focus is whether the parent utilized resources available while in prison to maintain a relationship with his or her child. *Id.* (citation omitted). An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his or her children. *Id.* Where the parent does not exercise reasonable firmness "in declining to yield to obstacles," parental rights may be forfeited. *In re Adoption of A.C.*, 162 A.3d at 1130 (quoting *In re Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975)).

Finally, the court must account for an incarcerated parent's self-imposed barriers while simultaneously evaluating the parent's duty to overcome them:

> Where a non-custodial parent is facing termination of his or her parental rights, the court must consider the non-custodial parent's explanation, if any, for the apparent neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the non-custodial parent and his or her child. Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

*In re B.,N.M.*, 856 A.2d at 855-856 (citations omitted).

Instantly, the orphans' court detailed Father's extensive efforts to maintain a relationship with Child:

- 6 -

- Contemporaneous with Father's six-year prison sentence was a five-year protection order. Notwithstanding the existence of the protection order, Mother initially encouraged a continuing relationship between Father and Child. Father and Child visited in the Mahoning County Justice Center in May 2014. But by Fall 2014, the parties divorced, and Mother decided she would not permit a relationship between Father and Child. Father sought visitation but his request was denied.

- From December 2014 until May 2015, Father's correspondence to Child, which began with his incarceration, increased to a weekly basis. Mother testified that she never opened any of the letters. In May 2015, Father learned by prison officials that his continued attempt to contact Child would result in his discipline. From May 2015 until November 2016, he continued the correspondence but sent the same to Paternal Grandmother, so she could contact Child. At this point, upon Mother's request, Father was found in violation of the protection order.

- Father continued to write to Child, but instead of trying to contact Child, he sent his correspondence to Paternal Grandmother with the understanding that she could keep the letters until the day came that Child was old enough and ready for them.

- While incarcerated, Father completed a parenting class, faith-based programs, and a convocational training course, the latter in which he excelled.

- In March 2017, Father sought to modify the protection order so as to allow Paternal Grandmother to be an authorized intermediary. But Father's petition was denied for lack of service and the hearing was never held. In May 2017, Father appeared telephonically to object to Mother's request to change Child's surname to the stepfather's surname; the court granted Mother's request.

- In June 2018, Mother filed in the instant petition to terminate Father's rights. Father is scheduled to be released in September 2019.

**See** Orphans' Court Findings of Fact, 2/12/19, at ¶¶ 6- 24.

The court concluded that Father utilized all resources reasonably available to him to maintain the parent-child relationship; that the Father did make sincere, continued efforts to maintain and foster the relationship; and that Father exercised reasonable firmness, given the obstacles placed in front of him, in his desire to maintain a bond with Child.

Notwithstanding her successful thwarting of Father's efforts to stay in contact with Child, Mother argues that Father forfeited his rights because he did nothing in 2018; *i.e.*, the six months immediately preceding the filing of her termination petition. **See** 23 Pa.C.S.A. § 2511(a)(1).

As we said in **In re B.,N.M.**, **supra**, we do not apply the six-month statutory provision mechanically; we must consider the whole of Father's endeavors to preserve the relationship. In addition to the efforts listed above, the court accepted Father's explanation why he did not engage in further litigation after 2017: "The reason I had stayed my hand was because they were seeking - - my attorney was also the attorney for my mother, who was seeking grandparent's visitation in Ohio. […] So we were waiting[.]" N.T., 1/16/2019, at 44. The orphans' court concluded that Father did not sleep on his rights during the six months leading up to Mother's petition. We agree.

Regarding Father's history of domestic violence, we are mindful of our role as an error-correcting court, and that this case concerns the termination of parental rights, not custody. The Involuntary Termination subchapter of the Adoption Act does not specifically address incarceration. Incarceration analyses are derived from the case law. In a proper review, we must yield to

the orphans' court's credibility determinations and findings of fact. While the record contains deplorable instances of Father's abuse – some of which Father denies and some of which he does not – we must acknowledge that the court found Father to be sincere in his efforts to preserve the parent-child relationship. Although Father's obstacles were self-imposed, the court determined he did all he could to overcome them. Under the totality of the circumstances, the orphans' court concluded that termination of parental rights was not warranted. We cannot say the court abused its discretion.

Even though the facts also support the opposite result, we adhere to our Supreme Court's directive in these difficult cases: we must resist the urge to second guess the orphans' court and not impose our own credibility determinations and judgment. *See In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

Because the orphans' court concluded that Mother's petition failed under section 2511(a), the court had no occasion to proceed to the second prong of the termination analysis under section 2511(b). This procedure was proper, and thus Mother's second appellate issue is moot. We therefore affirm the orphans' court order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2019